UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DERRICK CAIN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF DETROIT, *et al.*,<br><br>Defendants. | Case No. 20-cv-11099<br>Honorable Terrence G. Berg<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT & RECOMMENDATION TO GRANT DEFENDANTS' ORAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I.  **Introduction**

Defendants City of Detroit and Dennis Christie moved for an order to show cause why non-parties Britnie Mathis and Alesha Cain should not be held in contempt for failing to appear at their depositions. ECF No. 63. Defendants suspected that Plaintiff Derrick Cain was advising the witnesses not to comply with subpoenas. *Id.* at PageID.561-563. The Court ordered Cain, Ms. Mathis, and Ms. Cain to appear at a show cause hearing held on June 1, 2022. ECF No. 64. Before the hearing, Cain telephoned defense counsel and threatened him with violence if he continued to telephone Ms. Mathis and Ms. Cain. ECF No. 76,

PageID.685-689, 694.  Defendants thus orally moved to dismiss Cain's case as a sanction for bad faith conduct.  *Id.* at PageID.697, 699-700, 708.  The Court **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** and that the case be **DISMISSED WITH PREJUDICE**.

II.   Background

This civil rights action stems from Cain's April 2017 arrest for an alleged assault against his sister, Ms. Cain.  ECF No. 1, PageID.2.  In her written statement about the assault, Ms. Cain said that Cain strangled her.[1] As Ms. Cain fought to breathe and to get Cain to release her, Ms. Mathis (who is Ms. Cain's daughter) and other family members tried to get Cain away from his sister.  After Ms. Cain's son was finally able to push Cain away, Cain retrieved a rifle from his house and pointed it toward Ms. Cain and Ms. Mathis.  Ms. Cain reported that Cain said, "[Y]ou all dead to me!  I will fuck you up!  Get away from [my] house!  I'll kill you all!"

Ms. Mathis signed a statement that corroborated her mother's account of the assault.  She said that Cain had been drinking before he started choking Ms. Cain and then pointed the rifle as she and her family

---

[1] The statements and declaration cited here were provided to the Court at the hearing and are attached to this report.

members were preparing to leave. Ms. Mathis said that, after leaving the scene of the assault, she went to a police precinct and filed a report.

Ms. Cain and Ms. Mathis signed their statements to attest that they were true. A week after those statements, Detroit police officers searched Cain's house for his firearm and arrested him. ECF No. 1, PageID.2. Cain appears to allege that the officers had no probable cause to arrest him because Ms. Cain had withdrawn her complaint against him. *Id.* (stating that, when defendants authorized his arrest, the "initial complaint from which plaintiff was arrested . . . no longer exist[ed]"); *see also* attached May 2022 declaration from Ms. Cain (stating that Cain should not have been arrested because she told a detective that "no charges were going to be pursued"). Cain's complaint thus alleges false arrest, malicious prosecution, and false imprisonment. ECF No. 1, PageID.2.

In February 2022, defendants sent Ms. Mathis a notice of deposition and subpoena, which she received three days in advance. ECF No. 42-1, PageID.297; ECF No. 42-2, PageID.300. Defense counsel states that Ms. Mathis called and refused to appear. ECF No. 42, PageID.291. Counsel states that Cain also called and "irately" said that he "was refusing to let her

testify."² *Id.* at PageID.291.  Ms. Mathis did not appear for the deposition. ECF No. 42-3, PageID.304.  Defendants thus moved to compel the deposition, and Cain moved for a protective order to preclude the depositions of Ms. Mathis and Ms. Cain.  ECF No. 42; ECF No. 47.  The Court granted defendants' motion, denied Cain's motion, and ordered Cain to provide defendants with Ms. Mathis's mailing address so they could serve her with a subpoena.  ECF No. 52, PageID.390.

Cain did not provide the address as ordered, but defendants were able to contact Ms. Mathis to schedule a deposition.  ECF No. 63, PageID.559, 562.  Defendants sent Ms. Mathis and Ms. Cain subpoenas for depositions in April 2022, but the postal mail tracking shows the mail "was refused by the addressee[s]."  ECF No. 63-3; ECF No. 63-4; ECF No. 63-5, PageID.589; ECF No. 63-6, PageID.592.  Defense counsel states that he left a voicemail for Ms. Mathis to confirm the deposition, and a man who refused to identify himself called back a short time later from her phone number.  ECF No. 63, PageID.562.  The man demanded to know how counsel got Ms. Mathis's number and stated, "I have previously told

---

² Cain admits that he called counsel to object to the deposition but disputes defense counsel's claim that he stated that "he was refusing to let [Ms. Mathis] testify."  ECF No. 75, PageID.671 (quoting ECF No. 42, PageID.291).

4

you to stop harassing us." *Id.*  During the show cause hearing, Cain identified the caller as his nephew.  ECF No. 76, PageID.686, 691-692, 696, 705.  Mathis did not appear at the deposition.  ECF No. 63, PageID.561.

Defense counsel also called Ms. Cain to confirm the deposition.  *Id.* at PageID.560.  According to counsel, the person who answered the call was evasive and claimed not to be Ms. Cain, though she said she could speak for her.  *Id.* at 560-561.  She stated that Ms. Cain refused to respond to the subpoena.  *Id.* at 561.  Ms. Cain did not appear for her deposition.  *Id.*

Defendants then moved for an order for Ms. Mathis and Ms. Cain to show cause why they should not be held in contempt and related their suspicion that Cain was advising the witnesses not to appear for deposition.  *Id.* at PageID.561-563.  After receiving the motion, Cain made a threatening phone call to defense counsel, who hung up.  ECF No. 70, PageID.631-632, 634.  When counsel hung up, Cain called back and left a voicemail[3] stating:

> If you keep harassing my nephew and my nieces, then I ain't got nothing to do with that.  That's between you and them.
> They catch you off work and punch you in your face or do

---

[3] Defendants filed a recording of the voicemail in the traditional manner. *See* ECF No. 72.

> whatever that's between you and him. He don't give a damn about the 90 days [of jail for misdemeanor assault], he'll do that. . . . You tell the court whatever, but don't ever infer that I got irate 'cause I know what it's like when I get irate. I could care less what they do to you.

*Id.*

The Court granted defendants' motion to show cause and ordered Cain, Ms. Mathis, and Ms. Cain to appear for a June 1, 2022 hearing. ECF No. 64. Cain appeared at the hearing, but Ms. Mathis and Ms. Cain did not. ECF No. 76, PageID.681-682. Defendants sent Ms. Mathis and Ms. Cain notice of the hearing by certified mail. ECF No. 66. At the hearing, Cain said that defendants sent the notices to the wrong address, but he then denied knowing Ms. Mathis's and Ms. Cain's correct address. ECF No. 76, PageID.687, 713. Cain admitted during the hearing that Ms. Mathis and Ms. Cain are "evading service." *Id.* at PageID.693.

Cain also admitted that he left the threatening voicemail. *Id.* at PageID.685. He tried to justify his threats by stating that defense counsel had been "harassing" Ms. Mathis, Ms. Cain, and other family members by repeatedly calling to schedule depositions. *Id.* at PageID.686-687. Cain said:

> I directed [counsel]—I told him that I would have instructed my nephew, if he continues to keep calling my nephew's phone, to punch him in the face, and I also instructed him that I'm sure that my nephew wouldn't care about doing 90 days. That's

6

> what I told him. I told him that he was calling my nephew's phone. I said, 'Had I been the one who answered the phone and had I been irate, I would have told him, "Quit calling this fucking phone, and if you keep calling my phone, then I'm going to find you and kick your ass,"' is what I told him I would have told my nephew to say to him.

*Id.* at PageID.686.

The Court finds that Cain's threatening conduct warrants dismissal of his complaint.

### III. Analysis

### A.

Courts may dismiss a plaintiff's complaint as a sanction for violating discovery orders, procedural rules, or court orders. Fed. R. Civ. P. 37(b)-(c), 41(b). A court also has the inherent authority to sanction bad faith conduct, "derive[d] from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). "A primary aspect of [a court's inherent authority] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

Although dismissal is a severe sanction, it is within a court's discretion. *Bradley J. Delp Revocable Trust v. MSJMR 2008 Irrevocable Trust*, 665 F. App'x 514, 520 (6th Cir. 2016). Four factors guide whether

7

dismissal is proper: (1) whether the party's conduct was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Id.* at 520-21.[4]

No one factor is dispositive, but bad faith is the preeminent consideration. *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010). And while pro se litigants are generally entitled to a degree of leniency, "pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Porton v. SP One, Ltd.*, No. 6:15-cv-566–Orl-40KRS, 2015 WL 1648893, at *2 (M.D. Fla. Apr. 13, 2015) (internal quotation marks omitted).

The Court addresses each factor below.

---

[4] These factors are the same whether proceeding under Rule 37(b), Rule 41(b), or a court's inherent authority. *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

### 1. *Bad Faith*

Sanctions are warranted "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . or when conduct is tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (internal quotation marks omitted). "Bad faith" does not encompass mere negligence "but includes conduct that is either intentional or reckless." *Webastro Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 323 F. Supp. 3d 935, 939-40 (E.D. Mich. 2018). The Sixth Circuit has not settled the standard for finding bad faith—either by a preponderance of the evidence or clear and convincing evidence—but a court in this district inferred that the lesser standard of preponderance applies. *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 872-73 (E.D. Mich. 2017) (citing *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2016)). Regardless of the proper standard, Cain's threat of violence warrants the dismissal of his complaint.

Cain admits to telling defense counsel that he would direct his nephew to punch counsel in the face—subjecting his nephew to 90 days in jail—if counsel continued calling Ms. Mathis and Ms. Cain to schedule their depositions. Cain was not contrite at the hearing and did not recant his threat. Instead, he was argumentative and insisted that he made no

9

threats because he stated in "hypothetical" terms what he "would have" told his nephew to say. ECF No. 76, PageID.688, 692, 694-696. But while Cain tried to cloak his threats by using hypothetical terms, he made an unmistakable threat that he would have his nephew physically assault defense counsel if he called Ms. Mathis and Ms. Cain to try to secure their depositions. As defense counsel put it, "a threat is a threat is a threat." *Id.* at PageID.697.[5]

Cain's threat of criminal violence warrants dismissal. *Petito v. Brewster*, 562 F.3d 761, 763 (5th Cir. 2009) (upholding dismissal as a sanction because plaintiff referred to judicial officer in vulgar and abusive language and made potentially criminal threats to opposing counsel in emails); *see also White v. William*, 423 F. App'x 645, 645-47 (7th Cir. 2011) (upholding dismissal as a sanction for the plaintiff's vulgar and disrespectful outbursts toward opposing counsel and the court); *Porton*, 2015 WL 1648893, at *3-4, 6 n.5 (dismissing case because the plaintiff engaged in threatening conduct toward defendant's employees and counsel, including

---

[5] Cain's threatening conduct is just one way that he has obstructed discovery. He has refused to provide basic written discovery about his background (e.g., his age, birthday, and exact name), requiring motion practice to resolve these frivolous disputes. *See* ECF No. 52, PageID.390-392. Cain refused to answer similar questions during his deposition, claiming that the information was irrelevant or confidential. ECF No. 55-3, PageID.439-446.

leaving a voicemail recording of gunshots and threatening to punch an employee in the face); *Lee v. Sass*, No. 04-70550, 2006 WL 799176, at *1-2 n.1 (E.D. Mich. Mar. 29, 2006) (dismissing case because the plaintiff tried to suborn perjury from a witness by threatening physical violence).

### 2. Prejudice to Defense

By itself, Cain's threats of violence are troubling. The threats also prejudice defendants in their continued efforts to secure Ms. Mathis's and Ms. Cain's depositions. For months, defendants have been trying to secure the depositions, and Cain has been trying to block them. *See* ECF No. 42; ECF No. 47; ECF No. 52; ECF No. 60. Cain did not provide defense counsel with Ms. Mathis's address, as ordered. ECF No. 52. And although Cain denies instructing them to not testify or intimidating them, he has certainly discouraged them from testifying and encouraged their purposeful evasion of service. *See* ECF No. 76, PageID.686-687, 690-697. As part of the active efforts to prevent Ms. Cain and Ms. Mathis from testifying, Cain has told defense counsel that he will be punched in the face if he tries to contact the witnesses.

Cain's admission that he could command his nephew to assault defense counsel, and be jailed as a result, supports the suspicious that

Cain may have commanded Ms. Mathis and Ms. Cain to evade service and refuse to testify.

Ms. Mathis's and Ms. Cain's testimony would go to the core of Cain's false arrest, malicious prosecution, and false imprisonment claims. His efforts to prevent their depositions, including by threatening violence, prejudice defendants and support the dismissal of his complaint.

### 3. Prior Warning and Consideration of Less Drastic Sanctions

The third factor requires the Court to consider whether Cain was warned that his conduct might lead to dismissal. *Bradley J. Delp Revocable Trust*, 665 F. App'x at 520-21. But no prior warning is necessary here because of the evidence of Cain's bad faith. *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). Even as a pro se litigant, Cain needed no notice that threats of physical violence are unacceptable.

Finally, even though the Court must consider alternative sanctions, dismissal with prejudice is warranted when no other sanction would "protect [the] integrity of the judicial process." *Bradley J. Delp Revocable Trust*, 665 F. App'x at 524; *see also Harmon*, 110 F.3d at 368 (stating that egregious misconduct may warrant dismissal with prejudice as a "first and only

sanction"). Here, given Cain's threats and the prejudice they caused to defendants' discovery rights, dismissal with prejudice is the only sanction that will protect the integrity of the judicial process.

## IV. Conclusion

The Court recommends that defendants' motion to dismiss be **GRANTED** and that Cain's case be **DISMISSED WITH PREJUDICE**.

                                                  s/Elizabeth A. Stafford
                                                  ELIZABETH A. STAFFORD
                                                  United States Magistrate Judge

Dated: June 21, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 21, 2022.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager

## STATEMENT FORM

detroit police  Page 1 of __

☒ INTERVIEW   ☐ INTERROGATION

**Contact Location (Check One):**
☐ Walk-In to Police Facility  ☐ In Field/At Scene  ☐ Hospital  ☐ Conveyed by a DPD Member (Complete Witness Conveyance Form)

Location/Place: 11950 Warwick

**Print Information:**

FILE/CASE NO. 170409-0259

STATEMENT TAKEN BY: RANK, FIRST / LAST NAME, BADGE: Ofc Dennis Christie O3562

PRECINCT/COMMAND: 6th Pct PDO

DATE STATEMENT TAKEN: 4-18-2017  START TIME: 2:25 pm  END TIME: 3:10 pm

NAME OF PERSON PROVIDING STATEMENT: Aleshia Laronne Cain
D.O.B: 2-14-1968  AGE: 49  SEX: F  RACE: B  HGT: 5'03  WGT: 140 lbs

SOC. SEC. NO. (LAST 4 DIGITS): xxx-xx-3644
RESIDENCE: 20261 Ashton, Detroit MI 48219
PHONE BUS: ___  RES: 1-248-906-0730

EMPLOYER: Self Employed

RESIDING WITH: ___  CHILDREN / SCHOOL: ___

RELATIVES / FRIENDS: Britnie Mathis
ADDRESS: 814 471 Town Dr, Inkster MI
PHONE: 313-412-3665

REVIEWING SUPERVISOR RANK, FULL NAME, BADGE (PRINT): Lt William Denia L52
DATE: 4/18/17  TIME: 1530  PRECINCT/COMMAND: 6th Pct

Q: Do you understand I am conducting a criminal Investigation?
A: Yes

Q: Can you please explain the incident which occurred on 04-09-17 @ around 7pm?

A: I was over at my brothers house in which I used to stay at. My Son Frank Mathis and his wife Dominique Mathis along with their Children. My daughter Britnie Mathis and her child were also there. We were all hanging out and my Grandson ran around the corner. A lady on the block yelled the baby going around the corner. My Son Frank ran after him and that's when my brother Dennick Cain was in the house quickly he returned holding a blue nickel on shotgun saying whats going on whats the problem. He continued to run down the block to the corner, held the guy, he went around the corner then shortly returned and put the gun back in the house. When he came back out after putting the gun away I ask him being my brother, whats going on its not that serious. He didn't say anything for a minute then he said where is my Mother Fucker

Signature: Alesha Cain  4-18-17  3:10 PM
SIGNATURE OF PERSON PROVIDING STATEMENT / DATE AND TIME

C of D-72-ST (4-76)  DPD-103 (Rev. 04/2014)

PRINT NAME **Alesha Carr** (CONTINUED)   Page 2 of 2

coat. He kept repeating it. I along with my daughter kept telling him he didn't have a coat. It's 70° out. We continued to argue then at one point while we were arguing he ran off the porch and put his hands around my neck strangling me. I could barely breath. My daughter Britney came to help me. I continued to fight him off. I was up against the car. My daughter Britnie kept trying to fight him off me as well. My son Frank also kept trying to get Denrick off me. We all fought for a minute, then when my son pushed him back Denrick ran back into the house. We all tried to get the kids back in the car and have for our safety. That's when I saw Denrick return outside holding the same rifle or shotgun and pointing it in my direction towards me and my daughter Britnie who was standing next to me. Denrick was saying 'you all need to get! I will fuck you up! Get away from house! I'll kill you all! We all jumped into the cars and myself along with my daughter drove directly to the 6th Precinct to make a report.

Q. Were you in fear when the gun was pointed at you?
A. Yes for me and my family.
Q. When you shown a picture of your brother where you Ident him as Denrick Carr your brother and the person who pointed a gun at you and strangled you?
A. Yes Sir.
Q. Is everything you told me the truth to the best of your knowledge?
A. Yes Sir.

*Alesha K Carr*   4-18-17   8:10 pm
SIGNATURE OF PERSON PROVIDING STATEMENT / DATE AND TIME

C of D-72-ST (4-76)   DPD-103 (Rev. 04/2014)

**STATEMENT FORM** 13 **Detroit Police** Page 1 of 2
☒ INTERVIEW ☐ INTERROGATION

**Contact Location (Check One):**
☒ Walk-In to Police Facility ☐ In Field/At Scene ☐ Hospital ☐ Conveyed by a DPD Member (Complete Witness Conveyance Form)
Location/Place: 11450 Warwick

**Print Information:**

| STATEMENT TAKEN BY: RANK, FIRST / LAST NAME, BADGE: | PRECINCT/COMMAND |
|---|---|
| Ofc. Morris Christy 03542 | 6th Pct PDU |

| FILE/CASE NO. |
|---|
| 170409-0989 |

| DATE STATEMENT TAKEN: | START TIME | END TIME |
|---|---|---|
| 4-18-2017 | 3:30 pm | 3:55 |

| NAME OF PERSON PROVIDING STATEMENT | D.O.B. | AGE | SEX | RACE | HGT. | WGT. |
|---|---|---|---|---|---|---|
| Bridgette Anise Mathis | 9-5-1991 | 25 | F | B | 5'06 | 135 lbs |

| SOC. SEC. NO. (LAST 4 DIGITS): | RESIDENCE | PHONE: BUS. RES. |
|---|---|---|
| xxx xx 9277 | 471 Tobin Dr Apt 311, Inkster, MI 48141 | 313-412-3685 |

| EMPLOYER | DEPARTMENT | BADGE NO. | SHIFT |
|---|---|---|---|
| Maywood Nursing & Rehab | CNA | | |

| RESIDING WITH: | CHILDREN / SCHOOL: |
|---|---|

| RELATIVES / FRIENDS: | ADDRESS | PHONE: |
|---|---|---|
| Moneta Johnson | Same | 313-854-9194 |

REVIEWING SUPERVISOR: Sgt. B. Green 5420
DATE: 4/18/17 TIME: 4pm PRECINCT/COMMAND: 6PDU

Q. Do you understand I am conducting a criminal investigation?
A. Yes

Q. Please explain the incident which occurred on 4-9-2017 @ on around 7pm at 12100 Glastonbury?
A. I was over at my uncle Dennick Cain's house with my kid and my brother Frank and his wife Dominique and kids. A lady on the block said who kids is this? My brother ran down the block to get my son. Dennick ran in the house and came back out yelling don't know these motherfuckers didn't I. He was holding a rifle with a brown handle. I was saying there are kids out here. Dennick ran up the block then returned and put the gun back in the house. When he came back outside he was asking where his jacket was. I thought Dennick was kidding since he had been drinking. He kept arguing about it. We were about to leave and that's when Dennick jumped off the porch and grabbed my mom by the neck choking her. My brother Frank and I went over and got Dennick off my mom Alesha. We were getting in the cars to

SIGNATURE OF PERSON PROVIDING STATEMENT: X B H Ginie Mathis   DATE AND TIME: 9/18/17 3:55 PM

C of D-72-ST (4-76)   DPD-103 (Rev. 04/2014)

PRINT NAME Britini Mathis    (CONTINUED)    Page 2 of 2

leave and Dimick went back into the house and retrieved the rifle and came back outside pointing it at us saying I been gone 15 years I don't know you all. We all got in the cars and I come up to the 8th Precinct and filed a report.

Q. Did you think Dimick would shot the gun at you or anyone?
A. I don't know but I was afraid he would.

Q. Who is Dimick to you?
A. He is my uncle.

Q. Is everything you told me the truth to the best of your knowledge?
A. Yes.

Britini Mathis

X Britini Mathis   4/18/17   3:55 PM
SIGNATURE OF PERSON PROVIDING STATEMENT / DATE AND TIME

C of D-72-ST (4-76)    DPD-103 (Rev. 04/2014)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

DERRICK CAIN,                                          Case No. 20-cv-11099

    Plaintiff,                                       Hon. Terrence G. Berg

v.

City of Detroit, D, Christie, J. Gillis,

    Defendants.

_____/

DECLARATION OF ALESHA CAIN

ALESHA CAIN states:

1. I am not a party to this above action, and make this declaration on behave of my brother the plaintiff D. Cain.
2. First, to this Honorable court, My brother is not engaging in witness intimidation, when the City's attorney called my daughter, and demanded of her that she appear for a deposition she informed him she did not recall or remember any of the events, when asked her if she still lived at 20261 Ashton, Detroit MI, she told him no, and she further told him she was not going to give the him her current address. This occurred in feb 2022.
3. I went to by brothers house to find out what was going on and he explained to me his suit, I told him that he should have never been arrested that the detective knew prior to them raiding his house that no charges were going to be pursued, and choose to arrest my brother anyways. My brother showed me the court rule that stated service of a subpoena upon a person named therein shall be made by delivering a copy to such a person. And he told me I would be next.
4. The plaintiff has not in anyway told us not to testify, or advised, if and until we receive notice, an actual copy of the subpoena, we have no intention of attending any deposition.
5. The city of Detroit and its attorney continued to call my daughters phone harassing her, with repetious calls and messages, he didn't stop their somehow he found my second phone which I

1.

Which I keep for when friends or family need a phone he began constantly calling this phone not identifying himself and asking for me or my daughter, and Cam (Lonnie) my nephew answered and asked who he was and how he got this number he would not respond he simply asked for me or my daughter, and was told do not call this phone again.

6. Attorney C. Michels was called by me and informed that service would not be acknowledged over the phone and that we would not attend a deposition until we are properly served.
7. Pursuant to 28 USC sec. 1746, I declare under the penalty of perjury that the forgoing is true and correct.

Sincerely,

Alesha Cain.

May 29, 2022.

2.